United States District Court
Southern District of Texas
**ENTERED**
February 23, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DANIEL ACUNA, JR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:20-CV-00238 |
| | § | |
| COMMISSONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Daniel Acuna, Jr. filed this action pursuant to 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security ("the Commissioner") to deny his application for Social Security disability benefits and supplemental security income. Now pending is Acuna's motion for summary judgment and the Commissioner's response (D.E.s 20, 24). Acuna contends that the Administrative Law Judge ("ALJ") failed to evaluate the consultative examiner's opinion according to the appropriate standards and regulations requirements. For the reasons discussed further below, it is recommended that Acuna's motion (D.E. 20) be denied and this cause of action be dismissed.

### I.    JURISDICTION

This Court has jurisdiction under 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security and venue is appropriate because Acuna resides in Nueces County, Texas. 42 U.S.C. § 405(g); 28 U.S.C. § 124(b)(6).

## II.  BACKGROUND & ADMINISTRATIVE RECORD

### a.  *Application and Procedural History*

In May 2018, Acuna filed applications for disability insurance benefits and supplemental security income, alleging a disability commencing on August 1, 2016.  (D.E. 15-4 at 3, 11, 18-19, 36-37; D.E. 15-6 at 2-25).  He later amended the onset date to June 5, 2017.  (D.E. 15-3 at 13, 34, 39, 41).  Acuna claimed that his asthma, high blood pressure, bad knees, borderline diabetes, and torn rotator cuff limited his ability to work.  (D.E. 15-4 at 21; D.E. 15-7 at 6).  The Commissioner denied Acuna's applications administratively and Plaintiff requested an ALJ hearing. (D.E. 15-4 at 8, 16, 26, 34; D.E. 15-5 at 6-13, 18-26).  The ALJ held a hearing on September 25, 2019 (D.E. 15-3 at 28-59).  Plaintiff was represented by an attorney.  Plaintiff appeared and testified at the hearing.  (*Id.* at 35-51).  A vocational expert testified as well.  (*Id.* at 50-55).  On November 22, 2019, the ALJ rendered a decision that Plaintiff was not disabled from his alleged onset date through November 22, 2019, the date the decision was made.  (*Id.* at 13-26).  On July 23, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.  (*Id.* at 2-7).

### b.  *Medical Records*

On June 15, 2017, Plaintiff underwent imaging of his right shoulder.  (D.E. 15-8 at 6).  Dr. Thomas W. Ertzner found that there were moderate arthritic changes in the shoulder, normal alignment, and no acute fractures.  (*Id.*)

In the Disability Determination Explanation at the initial stage, on September 13,

2018, state medical consultant Dr. Patty Rowley concluded that there was insufficient evidence to evaluate Plaintiff's claim at that time.  (D.E. 15-4 at 6-7, 14-15).  On January 17, 2019, state medical consultant Dr. Scott Spoor reviewed Plaintiff's medical documents.  (*Id.* at 24, 32).  Dr. Spoor determined that the evidence was insufficient at that stage to complete the medical assessment.  (*Id.* at 23, 31).

On August 21, 2018, Plaintiff was examined by consultive examiner ("CE") Dr. Nadia K. Nooruddin.  (D.E. 15-8 at 15-20).  Plaintiff reported he had asthma all his life associated with shortness of breath and wheezing with recurrent exacerbation.  (*Id.* at 16).  Plaintiff was using a ProAir inhaler.  Plaintiff acknowledged that because of asthma, he was fired from the position of a sheet metal fabricator and had not worked since 2015.  Plaintiff reported suffering from hypertension for ten years, for which he was taking Lisinopril. Plaintiff had osteoarthritis, pain in both knees, and trouble bending and standing/walking for prolonged periods.  Plaintiff's knees had decreased range of motion.  Plaintiff applied Bengay on his knees as needed.  Plaintiff asserted that he suffered from this condition for at least eight years.  Plaintiff reported bilateral hand pain with a history of laceration of the left second, third, and fourth fingers, which was sutured in the past.  Plaintiff had decreased dexterity of bilateral hands and flexion contracture deformity of the left middle distal finger.  Plaintiff had experienced pain and decreased range of motion in his right shoulder for fifteen years. The medical staff, who examined Plaintiff before, suspected a rotator cuff tear.  Additionally, Plaintiff stated he had trouble lifting heavy objects and experienced difficulty with range of motion in both shoulders.  Plaintiff also

had surgery on the right elbow for tendon repair about ten years prior. Plaintiff had a history of bilateral borderline diabetes mellitus. Plaintiff was on a diet and stated he was not taking Metformin any longer. On examination, Plaintiff's breath sounds were symmetric and clear to auscultation; no rhonchi or rales were detected. (*Id*.).

Dr. Nooruddin found Plaintiff had pain with decreased range of motion in both shoulders. (*Id.* at 18). Plaintiff's right shoulder forward flexion was 80/180 degrees; extension 35/50 degrees; abduction 80/180 degrees; adduction 50/50 degrees; internal rotation was 60-90 degrees; and external rotation was 60/90 degrees. Dr. Nooruddin indicated Plaintiff was in a lot of pain during range of motion testing of the right shoulder. Plaintiff's left shoulder forward flexion was 140/180 degrees; extension was 45/50 degrees; abduction 90/180 degrees; adduction 50/50 degrees; internal rotation was 80/90 degrees; and external rotation was 80/90 degrees. Dr. Nooruddin determined range of motion of Plaintiff's left elbow was normal. However, she found that the range of motion of the right elbow was abnormal and decreased. Plaintiff's right elbow flexion and extension were 130/140 degrees, supination was 65/80 degrees, and pronation was 70/80 degrees. Also, there was pain with evidence of arthritis in the interphalangeal joint, bilateral hands. Dr. Nooruddin observed that Plaintiff had decreased range of motion of bilateral knees with a lack of endurance. Flexion was 80/130 degrees in both knees with crepitations on the range of motion. (*Id.*). Plaintiff was walking with a limp due to his bilateral knee condition. (*Id.* at 19). Plaintiff experienced difficulty standing on his heels and toes and had trouble squatting. He did not have much trouble getting off and on the examining table, but he

was using a step stool.  Plaintiff was not using an assistive device to walk across the room.

Dr. Nooruddin diagnosed Plaintiff with bilateral knee osteoarthritis.  (*Id.*).

Dr. Nooruddin concluded that Acuna had the residual functional capacity ("RFC")

to: (1) occasionally lift and/or carry 10 pounds; (2) frequently lift and/or carry less than 10

pounds; (3) stand and/or walk for 2 hours in an 8-hour workday; (4) sit for 6 hours in an 8-

hour workday with breaks; (5) have no limitations to postural, environmental, or visual

matters; and (6) engage in manipulative limitations with decreased dexterity and strength

in bilateral hands due to osteoarthritis.  (*Id.*).  Dr. Nooruddin made her findings regarding

the examination based on formal testing and her own observations of Plaintiff's

spontaneous action.  (*Id.* at 17).  Dr. Nooruddin also relied on Plaintiff's self-reported

medical history.  (*Id.* at 15).

On April 16, 2019, Plaintiff underwent imaging of his right shoulder.  (*Id.* at 25).

Dr. Alexander T. Aitken found that there were advanced degenerative changes at the

glenohumeral joint with no fractures or dislocation.  (*Id.*).

   c.   *Hearing*

At the hearing before the ALJ on September 25, 2019, Acuna testified to the

following.  At his previous job, he cut and prepared metal sheets to put them together. (D.E.

15-3 at 36).  He occasionally went into the office to type in the fittings that would send the

labels to the plasma machine and load up metal to cut the fittings.  Plaintiff supervised two

helpers there.  (*Id.* at 36-42).  Plaintiff started as a fabricator and then became a foreman.

*Id.*  Plaintiff worked there for seventeen years.  (*Id.* at 38).  The last eight years, he was in

charge of a group of eight to ten people.  Being in charge, Plaintiff cut out the material and distributed the jobs to the workers that were qualified to put it together. Acuna was no longer working.  (*Id.* at 41).  He received food stamps, occasionally donated plasma, and helped a photographer to gather his stuff.  (*Id.*).

Plaintiff testified that he had asthma all his life. (*Id.* at 40).  He used both a steroid inhaler and a rescue inhaler.  (*Id.* at 40, 48).  Plaintiff took steroids in the morning and at night because his asthma had gotten worse.  (*Id.* at 40-41).  Plaintiff used a rescue inhaler about eight to ten times every day.  (*Id.* at 49).  Plaintiff woke up at night because he felt like he was running out of breath.  Plaintiff was diagnosed with borderline diabetes.  He was taking Metformin for about six months.  (*Id.*).

Plaintiff stated that since he left his job in 2016, his knees and shoulders had been hurting the most.  (*Id.* at 43).  The pain in his right shoulder was worse than in the left.  He experienced pain every day.  (*Id.* at 44).  Plaintiff did not feel the pain for about 45 minutes after he has taken his pills.  (*Id.*).  The right shoulder pain woke him up almost every night. The pain became worse due to the necessity to lift sheets of metal at his past work.  (*Id.* at 45).  Plaintiff acknowledged that the pain in his right shoulder made it difficult to lift a gallon of milk.  (*Id.* at 48).  Plaintiff used over-the-counter ointments almost every day on his right shoulder and right knee.  (*Id.* at 45).

Plaintiff experienced pain in both knees, right worse than left.  (*Id.* at 46).  The pain was constant and happened every day.  Plaintiff did not feel pain only when he put an ointment on his knees.  Plaintiff's knees started to hurt due to his work activities as he had

to lift a lot of heavy metal and squat for many years.  (*Id.* at 49).  It was very hard for him to squat down and get back up because his right knee would lock up.  (*Id.* at 46).  He could stand for about 45 minutes to an hour because he would feel his right knee swelling.  (*Id.* at 46-47).  He would need a break for about fifteen to twenty minutes to continue standing. (*Id.* at 47).  He could walk for about fifteen to twenty minutes because of pain in his knees. (*Id.*).

The vocational expert ("VE") testified to the following.  Plaintiff's past work was identified as a sheet metal worker, which was medium skilled work that ran to heavy work as performed, and a metal fabricator, which was heavy skilled work.  (*Id.* at 52).  The VE stated that a hypothetical person who retained the ability to perform medium exertion work could perform the work of a sheet metal worker if they could: (1) lift and carry up to 50 pounds occasionally and up to 25 pounds frequently; (2) stand and/or walk for six hours in an eight-hour workday; (3) sit for six hours in an eight-hour workday; and (4) frequently reach overhead with their dominant upper extremity.  (*Id.* at 53).  Further, the VE stated the hypothetical person of Plaintiff's age, education, experience, and functional limitations would be able to perform work as an entry level medium unskilled SVP such as a marker, a cook helper, or a hand packer.  (*Id.* at 55).   If the hypothetical person retained only the ability to perform light work, however, then he could not perform Acuna's past work.  (*Id.*). No transferrable skills would be available at this point.  (*Id.* at 56).  If the hypothetical person would miss work three to four days per month or be off task for 25 percent of the workday there would be no work.  (*Id.* at 57).

### d.    *ALJ Decision*

The ALJ analyzed Plaintiff's claim for disability pursuant to a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).   At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his amended alleged onset date, June 5, 2017.   (*Id.* at 15).   At step two, the ALJ found severe impairments due to Plaintiff's obesity and right shoulder (osteoarthritis, impingement syndrome, adhesive capsulitis).   At step three, the ALJ found that Plaintiff's impairments did not meet or equal a listed impairment for presumptive disability under the regulations. (*Id.* at 16).   Next, the ALJ found that Plaintiff had the RFC to perform medium work, except that he could lift and carry fifty pounds occasionally and twenty-five pounds frequently; stand and/or walk for six hours daily; sit for six hours daily; and frequently reach overhead with his right arm.   (*Id.* at 17).   At step four, with the use of vocational expert testimony, the ALJ determined that Plaintiff could perform his past relevant work as a sheet metal worker.   (*Id.* at 20, 52-57).

Alternatively, with the use of vocational expert testimony, the ALJ found at step five that Plaintiff could perform other jobs in the national economy including marker, cook helper, or hand packager.   (*Id.* at 20-21, 42-57).   Accordingly, the ALJ determined that Plaintiff was not disabled as defined in the Act from the amended alleged onset date of June 5, 2017, through her November 22, 2019 decision.   (*Id.* at 22).   The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on July 23, 2020.   (*Id.* at 2-7).

### III.  DISCUSSION

In his motion for summary judgment, Acuna contends that the ALJ failed to evaluate the CE's opinion in accordance with the appropriate standards, which resulted in several mistakes.  (D.E. 12 at 9-18).  First, Acuna argues that the ALJ's finding at step two that his bad knees were not a severe impairment was not supported by substantial evidence where the CE noted his knee pain and decreased range of motion.  (*Id.* at 11-12).  Second, Acuna asserts that the ALJ did not properly evaluate the CE's opinion and incorrectly portrayed the CE as relying on Acuna's subjective complaints, when instead she relied on objective tests and visible impairments.  (*Id.* at 12-15).  Finally, Acuna argues that the RFC determination was not supported by substantial evidence because it was unsupported by any medical evidence.  (*Id.* at 16-17).

The Commissioner responds that the ALJ properly considered the medical evidence under the regulations, including the CE report, arguing that the report was unpersuasive due to insufficient support and consistency.  (D.E. 24 at 6-11).  The Commissioner argues Plaintiff suffered no harm when the ALJ did not consider his alleged knee problems "severe impairments" at step two.  (*Id.* at 11).   The Commissioner further argues that Plaintiff failed to supply any additional medical evidence, although he was afforded an opportunity to do such.  (*Id.* at 12-13).  Finally, the Commissioner submits that there is substantial evidence to support the ALJ's determination that Plaintiff has non-exertional limitations, and therefore the ALJ properly declined to apply the Grid Rule in this case.  (*Id.* at 13-15).

Judicial review of the Commissioner's decision regarding a claimant's entitlement

to benefits is limited to two questions: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The burden has been described as more than a scintilla, but lower than a preponderance. *Id.* The court must "scrutinize[] the record," but "may not reweigh the evidence or substitute its judgment for the Commissioner's." *Id.*

In evaluating a disability claim, the Commissioner follows a five-step sequential process to determine whether: (1) the claimant is participating in substantial gainful activity; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform other relevant work. *Martinez v. Chater*, 64 F.3d 172, 173-174 (5th Cir. 1995); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof on the first four steps, with the burden shifting to the Commissioner at the fifth step. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

At step two of the sequential evaluation, an impairment can be considered as not severe only if it is a "slight abnormality" that has "such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

Before going from step three to step four, the ALJ assesses a claimant's RFC. *Perez*,

415 F.3d at 461. RFC "is a determination of the most the claimant can still do despite [his] physical and mental limitations and is based on all relevant evidence in the claimant's record." *Id.* at 461-62. When assessing a claimant's RFC, the ALJ must consider all relevant medical and other evidence, including statements by the claimant and their family members regarding the limitations that result from their symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

The ALJ has a duty to develop the facts fully and fairly. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). However, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ considers several factors when evaluating medical opinions, including: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors as applicable. *Id.* §§ 404.1520c(c), 416.920c(c).

The most important factors when evaluating persuasiveness are supportability and consistency. *Id.* §§ 404.1520c(a), 416.920c(a). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1); 416.920c(c)(1). "Consistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the

more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1); 416.920c(c)(1).

The ALJ must articulate how persuasive they find all of the medical opinions and prior administrative medical findings in the record. *Id.* §§ 404.1520c(b), 416.920c(b). When a medical source provides multiple medical opinions, the ALJ may consider them in a single analysis. *Id.* §§ 404.1520c(b)(1), 416.920c(b)(1). The ALJ must address supportability and consistency, but the other factors are optional. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

"A medical opinion is a statement from a medical source about what [the claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in the claimant's ability to perform the physical or mental demands of work activities, perform other demands of work, and adapt to environmental conditions. *Id.* §§ 404.1513(a)(2), 416.913(a)(2). Medical signs and laboratory findings are "objective medical evidence." *Id.* §§ 404.1513(a)(1), 416.913(a)(1). "Other medical evidence" includes any other evidence from a medical source, including judgments about the nature and severity of the claimant's impairments. *Id.* §§ 404.1513(a)(3), 416.913(a)(3).

"Light work" involves: (1) lifting no more than 20 pounds, but lifting or carrying up to 10 pounds frequently; and (2) a good deal of walking or standing, or some pushing or pulling of arm and leg controls when it involves sitting most of the time. 20 C.F.R. §§ 404.1567(b), 416.967(b). "Medium work" involves: (1) lifting no more than 50 pounds,

but lifting or carrying up to 25 pounds frequently; and (2) a good deal of walking or standing, or some pushing or pulling of arm and leg controls when it involves sitting most of the time. 20 C.F.R. §§ 404.1567(c), 416.967(c).

Here, the ALJ properly evaluated the record as a whole and Dr. Nooruddin's medical opinion, and the ALJ's step two and RFC determinations were supported by substantial evidence.  As an initial matter, Acuna bears the burden at the first four steps of the sequential evaluation, including showing that his ability to work is significantly limited by a physical or mental impairment and that the impairment prevents him from doing past relevant work.  *Bowling*, 36 F.3d at 435.  However, Acuna submitted limited medical records and did not produce medical documentation that he saw any doctors or that he had physical or mental limitations that kept him from working due to his shoulder and/or knee pain.  (D.E. 15-3 at 17; D.E. 15-7 at 25-30, 71; D.E. 15-8 at 6-12, 25-31, 33).  The record has no evidence that Plaintiff saw doctors, as his record shows only shoulder x-rays and some blood tests, and the fact that he took no pain prescriptions.  (*See id.*).

As to the ALJ's determination at step two that Acuna's bad knees were not a severe impairment, the ALJ acknowledged Dr. Nooruddin found that Acuna had a decreased range of motion with a lack of endurance and crepitations.  (D.E. 15-3 at 16).  However, the ALJ noted that the record did not contain any imaging showing osteoarthritis or degenerative changes in Acuna's knees, and that Acuna still showed intact sensation, full motor strength, and good reflexes in his lower extremities.  (*Id.*; D.E. 15-8 at 19).  The substantial evidence standard requires only more than a scintilla, but less than a preponderance, of evidence in

support of the ALJ's conclusion. *Perez*, 415 F.3d at 461.  Given the lack of medical documentation of Acuna's knee impairments, and the factors the ALJ noted in support of the conclusion that his bad knees were not a severe impairment, that standard was met here.

As to the ALJ's wider consideration and evaluation of Dr. Nooruddin's consultative examination, the ALJ applied the proper legal standard when she addressed the supportability and consistency of Dr. Nooruddin's opinions.  The ALJ fully discussed Dr. Nooruddin's examinations of Acuna in the decision. (D.E. 15-3 at 18-20).  First, as to consistency, the ALJ stated that Dr. Nooruddin's conclusions regarding Acuna's limitations were inconsistent with the lack of edema in in his extremities, intact sensation, and full motor strength in his bilateral upper and lower extremities.  (*Id.* at 20).  The ALJ also noted that Acuna could get in and out of the exam chair without difficulty and ambulate without an assistive device, and he also reported many activities of daily life, including performing household chores like sweeping and raking, cutting the grass, and taking his sister to appointments.  (*Id.* at 17, 19).    Second, as to supportability, the ALJ stated that Dr. Nooruddin did not review any medical records or x-rays, and that her opinions were unsupported by the other limited medical evidence in the record and Acuna's own reports of his daily living activities.  (*Id.* at 19).  The ALJ need only address the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Because the ALJ here did so, she applied the proper legal standards when determining that Dr. Nooruddin's opinions were unpersuasive.

Finally, the ALJ's RFC determination was supported by substantial evidence.  As

14

noted above, Acuna submitted limited medical records regarding any of his impairments. Imaging of his right shoulder conducted in June 2017 showed moderate arthritic changes in his right shoulder, but normal alignment and no acute fractures.  (D.E. 15-8 at 6). Subsequent imaging of his right shoulder conducted in April 2019 showed advanced degenerative changes, but still no fractures or dislocation.  (*Id.* at 25).  In his function report, Acuna reported various activities of daily living, including sweeping floors, raking leaves, and shopping in stores.  (D.E. 15-7 at 25-30).  The limited medical documentation of Acuna's impairments, along with his reported activities of daily living, supported the ALJ's conclusion that Acuna had the RFC to complete medium work.  In sum, while there is some evidence in the record to support Acuna's claim that the RFC determination should have included greater restrictions, this Court is not allowed to reweigh the evidence, and the substantial evidence standard requires only more than a scintilla, but less than a preponderance, of evidence in support of the ALJ's conclusion. *Perez*, 415 F.3d at 461. That standard was met here.

## IV.  RECOMMENDATION

Based on the foregoing, is it recommended that Acuna's motion for summary judgment (D.E. 19) be denied and Acuna's cause of action be dismissed.

Respectfully submitted on February 23, 2022.

Julie K. Hampton
United States Magistrate Judge

15

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).